# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| JAMES HALL FOSTER, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 05 C 6175 |
| KIRK L. HILL, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Kirk L. Hill's ("Hill") petition "to find and certify that he was acting within the scope of his federal employment and substitute the United States of America as the sole defendant." ("Petition") (Pet. 1). For the reasons stated below, we deny the Petition.

## BACKGROUND

Hill contends that he was a member of a United States Navy Sea Air Land ("Seal") team from 1998 through 2003. Hill contends that in 1993, his unit was deployed to Somalia and that he also served in other locations overseas. Hill claims that in September 2000, he was transferred to the Naval Personnel Command in Millington, Tennessee. According to Hill, in July 2001, he began having delusions about possible spies that were infiltrating Seal teams and, because of those delusions,

he was sent to the Great Lakes Naval Hospital ("Hospital") for evaluation. James Hall Foster ("Foster") was a civilian employee for the Navy Drug Screening Laboratory at the Hospital, and also worked out at the Hospital gym ("Gym"). Hill alleges that on March 5, 2002, he saw Foster at the Gym and Hill thought that Foster was a Somali warlord who was there to kill him. Hill contends that, believing that he could act according to the rules of engagement with an enemy, he took a weight bar from a weightlifting machine and, without provocation, struck Foster with the bar. Hill filed a complaint in state court and the case was removed to the federal court. Hill is now before this court requesting that the court certify pursuant to 28 U.S.C. § 2679 (d)(3) that Hill was acting within the scope of his employment when he struck Foster.

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 2679 (d)(3):

> In the event that the Attorney General has refused to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant . . . .

28 U.S.C. § 2679 (d)(3). To determine whether a federal employee was acting within the scope of his employment, the court must consider the common law of the state in which the alleged acts occurred. *Snodgrass v. Jones*, 957 F.2d 482, 485 (7th

Cir. 1992). Under Illinois law, an employee's conduct is within the scope of his employment if: 1) "it is of the kind he is employed to perform," 2) "it occurs substantially within the authorized time and space limit," 3) "it is actuated, at least in part, by a purpose to serve the master," and 4) "force is intentionally used by the servant against another [and] the use of force is not unexpectable by the master." *Copeland v. County of Macon, Ill.*, 403 F.3d 929, 932 (7th Cir. 2005)(citing *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989)); *Taboas v. Mlynczak*, 149 F.3d 576, 582 (7th Cir. 1998)(citing *Pyne*, 543 N.E.2d at 1308).

## DISCUSSION

As an initial matter, we note that the parties agree that the United States Attorney General refused to certify that Hill was acting within the scope of his employment when he struck Foster. In addition, the United States concedes that Hill was acting out of a desire to serve the United States when he struck Foster.

### I. Type of Work Hill Was Employed to Perform

The United States argues that at the time of the incident, Hill was temporarily assigned to assist the Physical Readiness Coordinator ("Coordinator") at the Hospital and that Hill was not told that he could engage in combat-type missions at the Hospital. The evidence shows that Hill's duties involved leading exercises and stretching for overweight sailors. (Hill Dep. 42-43). Hill argues that the United States government "trained Hill to instinctively be a Seal at all times . . . ." (Reply

10). We disagree. It has been shown that Hill was trained to follow orders and that he was given different orders for different scenarios. (Hill Dep. 17, 19). For instance, Hill testified at his deposition that he was trained how to act under rules of engagement when in combat and that he was also trained how to act under a different set of rules when engaging in a training mission. (Hill Dep. 29).

On the date that Foster was struck by Hill, Hill was under orders to assist the Coordinator at the Hospital. There has been no showing that Hill was authorized to use the rules of engagement that he used in Somalia during his assignment at the Hospital. (Hill. Dep. 42-45). The fact that Hill used the rules of engagement at the Hospital Gym merely indicates his mental delusions and does not show that the United States government authorized him to use the rules of engagement at this time. There has been no showing that there was a particular security threat at the Hospital and the United States government could not reasonably have anticipated that Hill was going to use the rules of engagement for combat at the Gym. Hill testified that he was authorized to use force against an enemy combatant, but there is no evidence that would suggest that the United States government, in assigning Hill to work at the Hospital, anticipated that he would encounter an enemy combatant or authorized the use of the rules of engagement for combat in regard to any individual at the Hospital. (Hill Dep. 41). Therefore, Hill has not shown that he was engaging in the type of work that he was employed to do at the Hospital at the time of the incident.

II. Whether Conduct was Substantially Within Authorized Time and Space Limits

Hill argues that he, as a Seal, was trained to act according to his instincts in dealing with enemy combatants, regardless of where such enemies were found. However, Hill testified at his deposition that he was trained to follow orders. (Hill Dep. 17, 19, 29). When Hill was on a combat mission he was instructed to act in his Seal capacity and was allowed to consider certain factors and use his instincts. (Hill. Dep. 19). However, the evidence shows that Hill's conduct at the Hospital was not during a time period when he was authorized to act as a Seal or within the geographic area in which he was authorized to act as a Seal. In addition, the evidence shows that even at the Hospital on March 5, 2002, Hill was not scheduled to begin work until 1:00 p.m., and that he struck Foster at approximately 12:30 p.m., before he began work. (Shepherd Statement 1); (Runnels Statement 1)(Investigative Service Report 1)(Ex. 3 Cal.). The evidence further shows that Hill was at the Hospital Gym before his scheduled work and was lifting weights and playing basketball, which are recreational activities. Therefore, Hill has not shown that his conduct was substantially within the authorized time and space limits of his employment when he struck Foster.

III. Expectation of Use of Force

Hill argues that he was trained to act as a Seal in order to "kill enemy combatants." (Reply 14). However, as is indicated above, Hill was also trained to

follow orders. There has been no showing by Hill that he was authorized or expected to use force while on a temporary assignment at the Hospital, or that the United States government would have reasonably expected Hill to use force in order to perform his job as an assistant to the Coordinator at the Hospital. Therefore, based on all of the above, we deny Hill's Petition.

## CONCLUSION

Based on the foregoing analysis, we deny Hill's Petition. We also dismiss the United States as a Defendant in this case and remand this action back to the Illinois state court.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 17, 2006